IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN E. HOLLAND,

        Petitioner,

   v.                                   Case No. 2:14-cv-1460
                                        Judge Economus
WARDEN, SAMUEL A. TAMBI,          Magistrate Judge King

        Respondent.

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* ECF No. 3, Respondent's *Return of Writ*, ECF No. 6, Petitioner's *Traverse*, ECF No. 10, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> This case arose on November 6, 2010, when Deputy Robert Barr of the Licking County Sheriff's Office was on routine patrol. Around 12:16 p.m., Barr was dispatched to an address on Stoddens Bridge Road for a report of a vehicle parked in a wooded area, partially covered by a tarp. Barr described the scene as wooded and rural, between Stoddens Bridge Road and the Licking River. He immediately spotted a vehicle parked off the road, in the woods on the embankment near the river, partially covered by a camouflage tarp.
>
> Barr soon observed two males come up the embankment, followed soon by another male. At trial, he testified he saw "three heads, bobbing along" on the other side of the embankment. The two males approached and Barr asked them where the third had gone;

they replied he was on his way. Barr noticed a strong chemical odor coming from the direction of the men. He asked them what they were doing and they replied they were fishing, but they didn't have any equipment or fishing licenses. The third man now approached, identified by Barr at trial as appellant. Barr noticed appellant had a bleeding cut on his finger.

Barr asked all three individuals for I.D., which only appellant was able to produce. The other two provided names and dates of birth and are identified in the record as Nard and Stevens.

Appellant asked if he could get a napkin or something to cover the cut. Barr assented and appellant pulled the camouflage cover off to look inside the car for something to cover the cut. Appellant told Barr the vehicle belonged to his girlfriend and that he had borrowed it to drive to the scene.

Once backup officers arrived on the scene, the three men were separated and questioned; Barr testified all three had different stories about what they were doing at the river. Initially, appellant told Barr he drove to the river because he had a fight with his girlfriend.

Barr took a closer look at the vehicle. He smelled a strong chemical odor near the vehicle and observed what he believed to be a meth lab: a gas can covered with "white icing," later determined to be frost, sitting on the ground. He also saw a Mountain Dew soda bottle with a hose coming out of it. Barr photographed the evidence he observed and the photos were entered into evidence at trial.

Boerstler Testifies to Elements of a Meth Lab

Barr called Detective Boerstler, a drug trafficking investigator, to the scene. Boerstler is trained in investigation of meth labs and the resulting officer safety issues due to the volatility of chemicals involved. Boerstler testified to the steps involved in manufacturing methamphetamine and described some of the ingredients needed, which include pseudoephedrine pills, starting fluid, ether, coffee filters, anhydrous ammonia, camp fuel, containers and tubing, and lithium batteries. He noted there are hundreds of methods of manufacturing methamphetamine, and it may be "thrown together" in a 2–liter bottle of soda.

The process of cooking meth was described in general terms at trial. Pseudoephedrine pills must be broken down and crushed into

powder, then mixed with a solvent to extract the pseudoephedrine. Lithium camera batteries must be peeled with a utensil, allowing the lithium to react with the solvent in the anhydrous ammonia. The extracted ephedrine is collected in a coffee filter, solvent is added, and "meth oil" comes to the top. A hydrochloric gas generator is used to extract the meth from the oil, which may be as rudimentary as a soda bottle with tubing, salt, and sulfuric acid such as drain cleaner. The tubing is placed into the vessel containing the meth oil to turn the liquid into a solid, which is the finished product.

Evidence Found at the Scene

Boerstler described his observations at the scene on the Licking River in terms of his experience with the manufacture of methamphetamine. He observed the vehicle partially hidden in the woods and noticed the odor of ether coming from its trunk. He observed the 20–ounce Mountain Dew soda bottle in the grassy area off the trail, and concluded it was a gas generator because it was "off gassing," or producing hydrochloric gas as he watched. He testified there is no purpose for this process other than the manufacture ("cooking") of methamphetamine.

Further down the trail Boerstler found black and blue bags and two plastic containers, from which he immediately noticed the odor of anhydrous ammonia emanating. The black and blue bags were partially buried under grass and hidden under the bank. Boerstler searched for a tank of anhydrous ammonia and discovered a two-gallon gas tank with a frost line on it. The frost line indicated the presence of anhydrous because the substance is 28 degrees below zero when it comes out of a tank. This gas tank was found just west of the covered vehicle, and its lid was in the trunk.

The plastic containers and the gas tank tested positive for the presence of anhydrous ammonia. The bigger plastic container found on the riverbank contained an "active cook:" inside were pseudoephedrine pills, solvent, anhydrous ammonia, and peeled lithium batteries. Boerstler detected a slight pinkish color, typical of pseudoephedrine pills, and the lithium strips were bubbling. The other container was topped with a coffee filter containing white residue; on the bottom was a clear liquid which tested positive for anhydrous ammonia. Drain cleaner was found in one of the plastic bags, which may be used with salt to form a gas generator. The black bag contained pliers, salt, starting fluid, and a pair of gloves.

Boerstler obtained consent to search appellant's vehicle and in the trunk discovered a plastic bag containing peeled lithium batteries and punctured cans of ether from which the liquid had already been removed. Boerstler testified that punctured ether cans are commonly found at meth lab sites because punctured cans enable meth cooks to pour out the liquid instead of spraying it. The nozzle of the 2–gallon gas can was also in the trunk and tested positive for anhydrous.

Boerstler concluded the only purpose for this accumulation of items and chemicals is the manufacture of methamphetamine. He explained that he did not find the finished product at the scene because it was still being cooked when the trio was apprehended.

The Investigation and Appellant's Changing Stories

A witness from a CVS pharmacy testified appellant bought 48 pseudoephedrine pills on October 29, 2010, based upon the store's pseudoephedrine log. Appellant was identified in the log by date of birth and the given address of 22 Parker Avenue, Newark.

Appellant initially told Boerstler Nard and Stevens called him because they needed a ride and he claimed not to know anything about the meth cook. When asked how the ether cans got into the trunk, appellant said Nard had placed a bag of trash there to be thrown away. Appellant agreed he smelled the ether but said he didn't see anything unusual.

Boerstler then interviewed Nard, Stevens, and Donita Blackstone, appellant's girlfriend. After speaking with them, he returned to appellant, who now apologized and said he didn't want to snitch, but Nard had promised him $50 for a ride. Appellant didn't know about the meth cook until he arrived. He admitted the trio was not fishing, and admitted that he personally placed the ether cans in the trunk of the vehicle. He further explained he had covered the car with the tarp at Nard's request so it couldn't be seen from the road. Appellant denied purchasing pseudoephedrine pills but admitted he had used meth in the past. Appellant's given address was 22 Parker Avenue, Newark.

At trial, appellant testified and claimed total ignorance. He said Nard asked for a ride, promising to pay him $50. Appellant lives a few minutes away from the Stoddens Bridge Road location and arrived to find Nard with Stevens, whom appellant was also familiar with. Appellant said he pulled in to the area for vehicle access and Nard approached with a camouflage blanket, stating "it

wasn't done yet." Appellant said it was Nard who covered the car and denied bringing any meth ingredients to the scene. Nard told him they would need another 10 or 15 minutes, so appellant walked down the path along the river looking for arrowheads or rocks and cut his finger when he attempted to pull a tire out of the riverbed. He testified he didn't ask Nard and Stevens what they were up to because he assumed they were smoking crack.

Appellant further testified he didn't see law enforcement arrive and returned to the vehicle only because he thought Nard and Stevens were ready to leave. He claimed to have no idea what Nard and Stevens were doing and said he repeatedly told officers he didn't know anything. He also testified that Nard had placed the plastic bag in the trunk containing the ether cans and batteries, telling appellant it was trash to be thrown away. Appellant did admit he bought pseudoephedrine at the drugstore about a week prior because he had a cold. He denied making any of the statements Boerstler attributed to him and claimed not to have noticed any chemical smells at the scene.

Boerstler was recalled to the stand after appellant's testimony and reiterated that appellant told him had observed the meth cook taking place, and had later admitted he personally put the ether cans in the trunk and covered the car with the tarp.

Indictment, Conviction, and Sentence

Appellant was charged by indictment with one count of illegal manufacture of methamphetamine pursuant to R.C. 2925.04(A)(C)(3)(a), a felony of the second degree, and one count of illegal assembly of chemicals with intent to manufacture methamphetamine pursuant to R.C. 2925.041(A)(C)(1), a felony of the third degree. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgments of acquittal at the close of appellee's evidence and at the close of all of the evidence, and the motions were overruled. Appellant was found guilty as charged and sentenced to a prison term of seven years.

Appellate Procedural History

Appellant's initial appeal under this case number was filed on April 22, 2012. Through counsel, appellant raised one assignment of error: the trial court erred by including in the sentencing entry a provision that appellant is not to be considered or released on transitional control.

5

> On July 5, 2011, appellant filed a pro se "Motion to Stay Appeal and to Re–Appoint Appellate Counsel," arguing that appellate counsel should have raised a number of additional assignments of error. We denied the motion, noting "[a]ppellant is represented by counsel. This Court will not consider any future pro se pleadings filed by Appellant."
>
> We sustained appellant's sole assignment of error on the authority of *State v. Spears*, 5th Dist. No. 10–CA–95, 2011–Ohio–1538, ¶ 34–38, and reversed and remanded the matter to the trial court for resentencing absent the "transitional control" language. *State v. Holland,* 5th Dist. No. 11–CA–47, 2011–Ohio–6042, ¶ 6.
>
> On February 14, 2012, appellant filed a pro se Application for Reopening, which we sustained on June 4, 2012. Specifically, we found a genuine issue exists as to whether appellant was deprived of effective assistance of appellate counsel for failure to cite as error the sufficiency of the evidence, and ordered this issue to proceed as if on initial appeal to this court.
>
> Appellant now raises one Assignment of Error:
>
> "I. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

*State v. Holland,* No. 11-CA-47, 2013 WL 987837, at *1-5 (Ohio App. 5th Dist. Feb. 26, 2013). On February 26, 2013, the appellate court affirmed the judgment of the trial court. *Id.* On June 26, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Holland*, 136 Ohio St.3d 1404 (Ohio 2013).

Petitioner pursued various motions for collateral relief. On November 1, 2011, Petitioner filed a *Petition to Vacate or Set aside Judgment of Conviction or Sentence.* ECF 6-1, PageID# 233. The trial court denied the petition as untimely. *Id.* at PageID# 270. On November 22, 2011, Petitioner filed a *Motion for Relief from Judgment denying Petition to vacate or set aside Judgment of Conviction or Sentence*. *Id.* at PageID# 271. On November 30, 2011, the trial court denied that motion. *Id.* at PageID# 275. On March 28, 2012, the appellate court reversed

the judgment of the trial court and remanded the case for further proceedings. *Id.* at PageID# 301, 304. On June 19, 2012, the trial court denied the petition. *Id.* at PageID# 320. Petitioner filed a timely appeal. ECF 6-2, PageID# 325. Petitioner asserted that the trial court improperly dismissed his post conviction petition without an evidentiary hearing and erred by finding that his affidavits in support of the petition were defective. *Id.* at PageID# 406. On February 26, 2013, the appellate court affirmed the judgment of the trial court. *Id.* at PageID# 403. On June 26, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id*. at PageID# 458. Petitioner also filed "a variety of pleadings related to a filing of May 3, 2013 which is captioned In-Valid Complaint." *Id.* at PageID# 475. "The filing generally complains that the criminal complaint filed on a case was improper or somehow invalid." *Id*. The trial court denied that motion. *Id*. On September 13, 2013, the appellate court affirmed the judgment of the trial court. *Id*. at PageID# 490. On May 28, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id.* at PageID# 567. On December 14, 2013, Petitioner filed a *Delayed Application for Reopening,* which the appellate court denied as untimely on January 29, 2014. *Id.* at PageID# 561. On May 28, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *Id.* at PageID# 567.

Petitioner filed this action on September 9, 2014. He alleges that he is being held on a void sentence because the trial court failed to re-sentence him pursuant to the mandate of the state appellate court (claim one); that he was convicted on an invalid complaint (claim two); and that he was denied a fair trial due to prosecutorial misconduct (claim three). In habeas corpus claim four, Petitioner appears to raise various claims presented in his petition for post conviction relief: he alleges that he was convicted in violation of the Confrontation Clause, was denied a fair trial based on improper allegations by the prosecution, was denied the equal protection of the

7

law, and was denied the effective assistance of counsel based on his attorney's failure to raise these issues.  *Petition*, PageID# 31.  Respondent contends that Petitioner's claims are procedurally defaulted or are otherwise without merit.

**Claims One, Three, and Four: Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. § 2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam ); Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If he can no longer present his claims to a state court, he has waived them for federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 397 (1986*); Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a court must consider the following to determine whether consideration of the merits of a federal habeas claim is foreclosed because of a petitioner's failure to observe a state procedural rule: "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the court must determine whether the state procedural forfeiture is an 'adequate and independent'

state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court determines that the petitioner failed to comply with an adequate and independent state procedural rule, the petitioner must demonstrate cause for his failure to follow the State's procedural rule as well as actual prejudice from the alleged constitutional error. *Id.*

In claim one, Petitioner alleges that he is being held on an illegal sentence because the trial court failed to re-sentence him pursuant to the mandate of the Ohio Court of Appeals. In claim three, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. In claim four, Petitioner alleges that he was convicted in violation of the Confrontation Clause, was denied a fair trial based on improper allegations by the prosecution, was denied the equal protection of the law, and was denied the effective assistance of counsel based on his attorney's failure to raise these issues. All of these claims are readily apparent from the face of the record and should therefore have been raised on direct appeal, where Petitioner was represented by counsel who had not represented him at trial. Petitioner may now no longer raise these claims in the state courts under Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); State *v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce the procedural rule at issue because of the nature of Petitioner's procedural default.

Petitioner appears to have raised allegations made in support of claim four in his petition for post conviction relief; however, the appellate court affirmed the trial court's dismissal of these claims as barred under Ohio's doctrine of *res judicata.* ECF 6-2, PageID# 403. Thus, the state courts explicitly enforced Ohio's doctrine of *res judicata*.

9

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third prong of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); s*ee also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112 ; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure this Court's review of the merits of these claims if he establishes cause for his procedural default as well as actual prejudice from the alleged constitutional violations.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [, *i.e*.,] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard. Nothing in the record indicates that any external factor impeded Petitioner's ability to pursue proper appeals raising these claims.

Additionally, any claimed ineffective assistance of appellate counsel cannot serve as cause for Petitioner's procedural default of these claims, because Petitioner also procedurally defaulted his claim of ineffective assistance of appellate counsel, as evidenced by the state appellate court's denial of his Rule 26(B) application as untimely. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) (ineffective assistance of counsel can constitute cause for a procedural default only if that claim has been properly preserved).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup* [*v. Delo*]*,* 513 U.S. [298,] 316, 115 S.Ct. 851, 130 L.Ed.2d 808 [(1995)]. Thus, the threshold inquiry is whether "new

11

> facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted). The record in this action fails to satisfy this standard.

**Claim Two**

In claim two, Petitioner alleges that the complaint filed against him in the Municipal Court was invalid because it was neither executed under oath nor notarized, and because it contained no statement of facts. Moreover, Petitioner alleges, the complaint failed to establish cause for his arrest and failed to comply with Rule 3 of the Ohio Rules of Criminal Procedure. As a consequence, according to Petitioner, his conviction is a nullity.[1] However, this claim presents only an issue of an alleged violation of state law, which cannot form the basis of federal habeas corpus relief.

---

[1] The state appellate court addressed the merits of this claim in affirming the trial court's dismissal of Petitioner's *Motion Subject Matter Jurisdiction in-Valid Complaint*, ECF No. 6-2, PageID# 491. Specifically, the state appellate court held that, under Ohio law, the Court of Common Pleas is vested with jurisdiction over all crimes and offenses except in cases of minor offenses, and that an affidavit and complaint are unnecessary where, as in Petitioner's case, an indictment has been returned.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985)). It is only where the error has resulted in the denial of fundamental fairness that habeas relief will be granted.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

       _s/ Norah McCann King_
       Norah McCann King
       United States Magistrate Judge
       September 29, 2015